UNITED STATES DISTCT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LASERLINE MFG., INC., Kyl §<br>  §<br>     Plaintiff,  §<br>  §<br>v.  §<br>  §<br>KYLE BURNS d/b/a §<br>MARKEZ, §<br>  §<br>     Defendant. § | CIVIL ACTION NO. 3:26-cv-406<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff LASERLINE MFG., INC. files this Original Complaint for Patent Infringement against Defendant KYLE BURNS d/b/a MARKEZ alleging as follows:

### I. THE PARTIES

1. LASERLINE MFG., INC., ("Plaintiff" or "LaserLine") is a company with a principal place of business at 1810 SE First Street, Suite H Redmond, Oregon, 97756.

2. Defendant KYLE BURNS d/b/a MARKEZ ("Defendant") is an individual residing at 723 Hopkins Ave, Duncanville, Texas, 75116. Defendant engages in business in the state of Texas under the name MarkEz.

### II. JURISDICTION AND VENUE

3. This is an action for infringement of United States patents under 35 U.S.C. §§ 271, *et seq*. Federal question jurisdiction is conferred to this Court over patent infringement actions action under 28 U.S.C. §§ 1331 and 1338(a).

4. On information and belief, Defendant is an individual residing at 723 Hopkins Ave, Duncanville, Texas, 75116, within this district, and is subject to this Court's personal

1

jurisdiction. Defendant makes, uses, and operates an online business selling its products from this location as well. The making, using, and selling of Defendant's products form the basis for the claim of patent infringement made herein.

5. Defendant has sufficient minimum contacts with the Northern District of Texas such that this venue is fair and reasonable. Defendant has committed such purposeful acts and/or transactions in this District that Defendant should reasonably know and expect that it could be hailed into this Court as a consequence of such activity. Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the Northern District of Texas.

6. On information and belief, Defendant directly and/or through intermediaries, has advertised (including through websites), made, offered to sell, sold, used, imported and/or distributed products covered by patents, in this District. Further, Defendant directly and/or through intermediaries has purposefully and voluntarily placed such products in the stream of commerce knowing and expecting them to be purchased and used by consumers in Texas and in this District. By way of example, Defendant offers an online website for its products[1]. For the reasons set forth herein, personal jurisdiction exists and venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1391(c)(3) and/or 28 U.S.C. § 1400(b).

7. For the reasons set forth herein, personal jurisdiction exists and venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1391(c)(3) and/or 28 U.S.C. § 1400(b).

---

[1] As of the filing of this Complaint, Defendant's website can be found at: https://markez.ueniweb.com/

## III. BACKGROUND FACTS

8. LASERLINE MFG., INC. is the owner of United States Patent Nos. US 9,644,331 B2 ("the '331 Patent"), US 10,202,726 B2 ("the '726 Patent"), and US 10,597,832 B1 ("the '832 Patent") (collectively, "the Asserted Patents" or "the Patents-in-suit"). By way of assignment, LaserLine is owner of all right, title, and interest in and to the Patents-in-Suit, with all rights to enforce the patents against infringers and to collect damages for all relevant times, including the right to prosecute this action.

9. LaserLine is a U.S.-based company which designs and manufactures laser controlled equipment for construction, surveying, engineering and government agencies. LaserLine seeks to provide customers with products that are of the highest quality, easy to use, and built to withstand harsh environments daily.

10. LaserLine has roots going back to the early days of the construction laser business over 40 years ago and focuses on innovative products with concepts born in the field. Robert W. Vanneman and Timothy A. Treichler, the named inventors, developed the Asserted Patents working at LaserLine in service of LaserLine's ongoing efforts to produce innovative, technology-driven, quality products.

11. LaserLine directly markets and sells products incorporating inventions disclosed in the Asserted Patents, including the GL1000 Parking Lot Striping Guidance Laser, and maintains licensing arrangements with Graco Inc., an authorized distributor of LaserLine products. To enable these activities, LaserLine has expended both time and effort, filing annually for an FDA accession number and becoming CDRH and OSHA compliant in the United States to ensure its products are both high quality and safe.

12. On multiple occasions, beginning at least as early as December 1, 2025, LaserLine contacted Defendant to make Defendant aware of its inventions and demand Defendant cease his infringing conduct.

13. In the first of these communications dated December 1, 2025, sent both by email and U.S. Mail, LaserLine notified Defendant of the Asserted Patents and demanded Defendant cease infringement, offering not to seek monetary compensation should the Defendant agree.

14. Defendant responded twice, both on December 7, 2025, and on December 9, 2025, asserting non-infringement. Confusingly, Defendant asserted the Accused Products did not infringe because it did not have features which were not in the claims of the Asserted Patents. Defendant then requested a claim chart demonstrating infringement.

15. LaserLine responded with an additional letter, dated January 5, 2026. LaserLine indicated that Defendant's response did not seem to reflect a careful review and analysis of claims, and as a courtesy provided an illustrative claim chart focusing on Claim 1 from the '832 Patent. LaserLine again demanded Defendant cease infringing activity.

16. Defendant responded in a letter, received January 15, 2026. Defendant argued that Defendant's products did not include an element of Claim 1 of the '832 Patent and then Defendant included photographs showing the element on the Accused Products that Defendant alleged was not present. Defendant then repeated and added to previous assertions that various features not in the claims of the Asserted Patents were necessary for infringement.

17. LaserLine responded with a letter, dated January 21, 2026. LaserLine explained why Defendant's argument was deficient and explained that the features not in the Accused Products which were also not in the claims of the Asserted Patents had no impact on

infringement. LaserLine reiterated its right to enforce valid patent rights and again demanded Defendant cease infringing activity.

18.     Defendant responded with a letter dated January 28, 2026.  Defendant reiterated his argument of the letter of January 15, again asserted the importance of features not in the claims for patent infringement and made no indication he was willing to cease his infringing activity.

19.     LaserLine is entitled to past damages on any direct infringement claims starting six (6) years from the filing of this Complaint and any indirect infringement claims starting at least as early as December 7, 2025, because Defendant's knowledge of the Asserted Patents is unquestionable and satisfies the definition of notice provided by 35 U.S.C. § 287. Defendant had actual knowledge of the Asserted Patents and received and acknowledged written notification regarding the patents.

### IV.  THE ASSERTED PATENTS

20.     On May 13, 2014, Robert W. Vanneman  filed Provisional Patent Application No. 61/992,695 with the Patent Office, and ultimately a series of patent applications would be filed resulting in the issuance of the Asserted Patents. As previously stated, there are three Asserted Patents, the '331 Patent, the '726 Patent, and the '832 Patent. The Asserted Patents are entitled to an effective filing date and priority at least as early as the earliest effective filing date and priority date indicated on the face of each patent, which is presumed valid. LaserLine's patents disclose and claim various types of paint striping systems, paint striping machine guidance systems, as well as methods of operating the same.

21. As set forth in the Technical Field and Background of the Invention, the Asserted Patents relate to the field of reference systems for guiding parking-lot line painting operations and other types of linear alteration of underfoot surfaces. Traditional methods involved affixing a taught string to endpoints of a line, and either snapping the string to leave chalk marks, or leaving intermittent marks along the length of the string to indicate a path for a paint striping machine to apply paint along the path of the line. This process can be time-consuming and cumbersome. Additionally, the string is apt to snag on obstructions and in windy weather the string may bow over longer distances.

22. The Asserted Patents offer significant improvements over Prior Art by reducing or eliminating much of the time-consuming and cumbersome layout process. In one embodiment this is achieved by connecting a paint striping machine to a guidance system configured to emit a planar light region on an underfoot surface to form a visible indicator line. '832 3:40-47  Not only did this remove the need for layout markings between the endpoints of a path, in comparison to using a layout process involving a string, it created a more reliable system that was not impacted by wind or obstructions.

23. The Asserted Claims are directed towards patent eligible concepts and are not directed towards an abstract idea. The Asserted Claims originate from a technical field (e.g., reference systems for guiding parking-lot line painting operations and other types of linear alteration of underfoot surfaces) and focus on problems specifically arising in such field as described in the Asserted Patents and discussed above. The Asserted Claims focus on improvements to parking-lot line painting operations in a specific, concrete way, and those specific improvements are found directly in the Asserted Claims. The Asserted Claims of the Asserted Patents capture concepts not well-understood, routine, or conventional in the art. The

non-conventional and non-generic use and arrangement of components disclosed by the patents achieves a technological solution to a technological problem specific to parking-lot line painting operations, and results in a new and novel way for laying out and painting lines on pavement.

24. LaserLine makes and sells products that utilize the patented technologies. LaserLine marks its products in compliance with 35 U.S.C. § 287, including instances of virtual marking and/or physical marking.

## V. THE ACCUSED PRODUCTS

25. Defendant makes, sells, offers for sale, and/or imports into the United States, solutions for parking lot striping including the Accused Products. Defendant's online website may be accessed at https://markez.ueniweb.com/. The Accused Products includes the Green Line Laser Kit, which includes the green line laser, mounting bracket, 12-volt battery, power inverter, adapter, new shadow box, inline fuse and protective hardcase. Defendant offers the Green Line Laser Kit for sale on Defendant's website and markets the device on their website for parking lot layouts as a direct alternative to products sold by LaserLine's licensed distributor Graco.

26. LaserLine identifies the above Green Line Laser Kit for representative purposes only and alleges infringement as set forth by all other products made, used, imported, sold, or offered for sale by Defendant that include the same or similar infringing technology. The Accused Products include all future generations of the infringing design, as well as any successor products, or later-released products that utilize the same or similar design.

## COUNT 1: PATENT INFRINGEMENT OF U.S. PATENT NO. 9,644,331

27. LaserLine repeats and re-alleges all preceding paragraphs of this Complaint, including those describing the features and operation of the Accused Products, as though fully set forth herein.

28. On May 9, 2017, United States Patent No. 9,644,331 ("the '331 Patent") was duly and legally issued for a "PAINT-STRIPING LASER GUIDANCE SYSTEM AND RELATED TECHNOLOGY." A true and correct copy of the '331 patent is attached hereto as Exhibit "A" and made part hereof.

29. Defendant, without authority, consent, right, or license, and in direct infringement of the '331 Patent, makes, has made, uses, and sells the Accused Products, which comprise the components and functionality described above, and which infringe at least claim 1 of the '331 Patent, among others. Defendant's actions constitute direct infringement, either literally or under the doctrine of equivalents, of at least claim 1 of the '331 Patent.

30. Defendant actively induces infringement of one or more of the claims of the '331 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b). A customer's use of the Accused Products in the manners described above infringes at least claim 1 of the '331 Patent. Defendant knows that the Accused Products are especially designed for and marketed toward infringing use by its customers. Defendant has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale, and/or import one or more of the Accused Products.

31.     Additionally, Defendant provides step-by-step instructions for setup and use of the Accused Products to operate in a manner that directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '331 Patent. Such conduct by Defendant was intended to and actually did result in direct infringement by Defendant's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States. On information and belief, Defendant provides and will continue to provide encouragement and/or instructions that encourage and/or instruct its customers to use, and use in the future, the Accused Products in an infringing manner, specifically intending such customers will operate the Accused Products in such a manner, and knowing of such actions, which constitutes infringement of one or more claims as set forth herein. Defendant engages in such inducement knowingly and, at least from the time of receipt of the Complaint, has done so with knowledge that such activity encourages and/or instructs customers of its Accused Products to directly infringe the Patents.

## COUNT 2: PATENT INFRINGEMENT OF U.S. PATENT NO. 10,202,726

32.     LaserLine repeats and re-alleges all preceding paragraphs of this Complaint, including those describing the features and operation of the Accused Products, as though fully set forth herein.

33.     On February 12, 2019, United States Patent No. 10,202,726 ("the '726 Patent") was duly and legally issued for a "PAINT-STRIPING LASER GUIDANCE SYSTEM AND RELATED TECHNOLOGY." A true and correct copy of the '726 patent is attached hereto as Exhibit "B" and made part hereof.

9

34. Defendant, without authority, consent, right, or license, makes, has made, uses, and sells the Accused Products, which comprise the components and functionality described above, the use of which in the intended manner, infringes at least claim 1 of the '726 Patent, among others. Defendant's actions constitute direct infringement, either literally or under the doctrine of equivalents, of at least claim 1 of the '726 Patent.

35. Defendant actively induces infringement of one or more of the claims of the '726 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b). A customer's use of the Accused Products in the manners described above infringes at least claim 1 of the '726 Patent. Defendant knows that the Accused Products are especially designed for and marketed toward infringing use by its customers. Defendant has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale, and/or import one or more of the Accused Products.

36. Additionally, Defendant provides step-by-step instructions for setup and use of the Accused Products to operate in a manner that directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '726 Patent. Such conduct by Defendant was intended to and actually did result in direct infringement by Defendant's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States. On information and belief, Defendant provides and will continue to provide encouragement and/or instructions that encourage and/or instruct its customers to use, and use in the future, the Accused Products in an infringing manner, specifically intending such customers will operate the Accused Products in such a manner, and knowing of such actions, which constitutes infringement of one or more claims as set forth

herein. Defendant engages in such inducement knowingly and, at least from the time of receipt of the Complaint, has done so with knowledge that such activity encourages and/or instructs customers of its Accused Products to directly infringe the Patents.

## COUNT 3: PATENT INFRINGEMENT OF U.S. PATENT NO. 10,597,832

37. LaserLine repeats and re-alleges all preceding paragraphs of this Complaint, including those describing the features and operation of the Accused Products, as though fully set forth herein.

38. On March 24, 2020, United States Patent No. 10,597,832 ("the '832 Patent") was duly and legally issued for a "PAINT-STRIPING LASER GUIDANCE SYSTEM AND RELATED TECHNOLOGY." A true and correct copy of the '832 patent is attached hereto as Exhibit "C" and made part hereof.

39. Defendant, without authority, consent, right, or license, and in direct infringement of the '726 Patent, makes, has made, uses, and sells the Accused Products, which comprise the components and functionality described above, the use of which infringes at least claim 1 of the '832 Patent, among others. Defendant's actions constitute direct infringement, either literally or under the doctrine of equivalents, of at least claim 1 of the '832 Patent.

40. Defendant actively induces infringement of one or more of the claims of the '832 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b). A customer's use of the Accused Products in the manners described above infringes at least claim 1 of the '832 Patent. Defendant knows that the Accused Products are especially designed for and marketed toward infringing use by its customers. Defendant has induced, caused, urged, encouraged, aided and abetted its direct and

indirect customers to make, use, sell, offer for sale, and/or import one or more of the Accused Products.

42. Additionally, Defendant provides step-by-step instructions for setup and use of the Accused Products to operate in a manner that directly infringes, either literally or under the doctrine of equivalents, at least claim 1 of the '832 Patent. Such conduct by Defendant was intended to and actually did result in direct infringement by Defendant's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States. On information and belief, Defendant provides and will continue to provide encouragement and/or instructions that encourage and/or instruct its customers to use, and use in the future, the Accused Products in an infringing manner, specifically intending such customers will operate the Accused Products in such a manner, and knowing of such actions, which constitutes infringement of one or more claims as set forth herein. Defendant engages in such inducement knowingly and, at least from the time of receipt of the Complaint, has done so with knowledge that such activity encourages and/or instructs customers of its Accused Products to directly infringe the Patents.

## VI.  JURY DEMAND

LaserLine hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.  PRAYER FOR RELIEF

WHEREFORE, LaserLine respectfully requests that the Court find in its favor and against Defendant, and that the Court grant LaserLine the following relief:

      a.      Judgment that one or more claims of the Asserted Patents have been directly infringed, either literally or under the doctrine of equivalents, by Defendant;

      b.      Judgment that one or more of the claims of the Asserted Patents have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

      c.      Judgment that Defendant account for and pay to LaserLine all damages to and costs incurred by LaserLine because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

      d.      Judgment that Defendant's infringement be found to be willful from the time Defendant became aware of its infringement, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

      e.      That LaserLine be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities;

      f.      That the Court declare this an exceptional case and award LaserLine its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285;

      g.      That Defendant, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of one or more claims of the Asserted Patents or, in the alternative, if the Court finds that an injunction is not warranted, LaserLine requests an award of post judgment royalty to compensate for future infringement; and

      h.      That LaserLine be granted such other and further relief as the Court may deem just and proper under the circumstances.

Date: 02/16/2026                                          Respectfully submitted

                                                           */s/ Jonathan T. Suder*
                                                           Jonathan T. Suder
                                                            Texas State Bar No. 19463350
                                                            FRIEDMAN, SUDER & COOKE
                                                            604 East 4th Street, Suite 200
                                                            Fort Worth, TX 76102
                                                            Phone: 817-334-0400
                                                            Fax:817-334-0401
                                                            jts@fsclaw.com

                                                            **ATTORNEYS FOR PLAINTIFF**
                                                            **LASERLINE MFG., INC.**